RANDY S. GROSSMAN
United States Attorney
MATTHEW J. SUTTON
Assistant United States Attorney
Illinois State Bar No. 6307129
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8941
Matthew.Sutton@usdoj.gov

Attorneys for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO ESCOBEDO-SILVA (1),<br><br>Defendant. | Case No.: 14-cr-02124-DMS<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |

### INTRODUCTION

Defendant Eduardo ESCOBEDO-Silva has filed a motion asking this Court to terminate his term of supervised release early. The United States joins with the Probation Officer and opposes the motion. This Court should deny the motion.

### BACKGROUND

On July 25, 2014, a two-count indictment was filed in the Southern District of California, charging Eduardo ESCOBEDO-Silva (Defendant or ESCOBEDO) and Chris Quang DO with 21 U.S.C. §§ 952, 960, and 963, Conspiracy to Import Marijuana, as to Count One; and 18 U.S.C. § 1956(a)(2)(A) and (h), Conspiracy to Launder Money, as to Count Two. ESCOBEDO pled guilty to both counts of the indictment on June 30, 2015. On March 24, 2017, this Court sentenced Defendant to 57 months' custody and five years' supervised release as to Count 1; and 57 months' custody and three years' supervised release as to Count

2. The Court ordered the sentences to run concurrently. Defendant filed the motion to terminate supervised release with the Court on February 16, 2022.

Offense Conduct

OCDETF Operation Narco Polo is part of a multi-year investigation that, in total, has resulted in charges against over 125 people and has had a significant impact on the worldwide operations of the Sinaloa Cartel. This investigation has also offered one of the most comprehensive views to date of the inner workings of one of the world's most prolific, violent and powerful drug cartels. Cartel members and associates were targeted in this massive investigation involving multiple countries, numerous law enforcement agencies around the United States, a number of federal districts and over 250 court-authorized wiretaps in this district alone.

This case began in late 2011 as an investigation of what was at first believed to be a small-scale drug distribution cell in National City and Chula Vista. It became evident that the drugs were being supplied by the Sinaloa Cartel, and the case evolved into a massive multi-national, multi-state probe that resulted in scores of arrests and seizures of 1,397 kilograms of methamphetamine, 2,214 kilograms of cocaine, 17.2 tons of marijuana, 95.84 kilograms of heroin, and $27,892,706 in narcotics proceeds.

During the investigation, agents identified IVAN Archivaldo Guzman-Salazar as the oldest son of then Sinaloa Cartel leader, Joaquín Archivaldo Guzmán Loera, aka "CHAPO" and the leader of his own drug trafficking cell. Agents learned that IVAN shipped large quantities of marijuana to his Los Angeles-based distributor Eduardo ESCOBEDO-Silva. Law enforcement identified two large marijuana seizures – an October 26, 2013, seizure of 2.7 tons and a February 8, 2014, seizure of 1.25 tons of marijuana – linked to IVAN and ESCOBEDO. In addition, ESCOBEDO assisted in the laundering of drug proceeds through the purchase of high-end luxury vehicles on behalf of IVAN.

On August 13, 2014, investigators conducted surveillance at ESCOBEDO's apartment complex located in Los Angeles, California, to prepare for a federal arrest warrant issued for ESCOBEDO. While conducting surveillance, investigators observed ESCOBEDO arrive at

the location with three other Hispanic male adults. Once ESCOBEDO exited his vehicle, investigators approached him to make contact. During the contact, one of the three males threw a BMW vehicle key which belonged to a BMW sedan with paper plates. After locating the BMW sedan, an investigator smelled a strong odor of marijuana emanating from the vehicle. ESCOBEDO and the three other males were detained. Upon searching ESCOBEDO, a large amount of currency was found in his bag, along with four cell phones, a pay-owe sheet and vehicle keys to five different vehicles

<u>Defendant's Request for Early Termination</u>

On February 16, 2022, Defendant filed a motion to terminate his supervised release early. According to Defendant, he has served 40 months of his 60-month term of supervised release. In his motion, Defendant states that he has overcome his addiction to alcohol and drugs, he has been fully rehabilitated following his release from BOP custody, and he is gainfully employed and has strong family support.

## **LEGAL FRAMEWORK**

The legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e). Section 3583(e)(1) provides that, after considering the subset of factors set forth in 18 U.S.C. § 3553(a), a court may terminate supervised release if it is satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice. *United States v. Ponce*, 22 F.4th 1045 (9th Cir. Jan. 11, 2022).

The § 3553(a) factors to be considered are: (1) the nature and circumstances of the offense and the nature and characteristics of the defendant, <u>see</u> § 3553(a)(1); (2) the need for the sentence imposed to provide adequate deterrence, <u>see</u> § 3553(a)(2)(B); (3) the need for the sentence imposed to protect the public from further crimes by the defendant, <u>see</u> § 3553(a)(2)(C); (4) the need for the sentence to provide the defendant with needed educational, vocational, medical, or other correctional treatment or aide, <u>see</u> § 3553(a)(2)(D); (5) the kind of sentence and the sentencing range established for the applicable category of offense in the sentencing guidelines, <u>see</u> § 3553(a)(4); (6) any pertinent policy statement issued by the Sentencing Commission, <u>see</u> § 3553(a)(5); (7) the need to avoid unwarranted sentence

disparities, see § 3553(a)(6); and (8) the need to provide restitution to any victims, see § 3553(a)(7).

## ARGUMENT

While it appears that Defendant has complied with the terms of his supervised release, and has had no violations, that is what is required of all criminal defendants and is not independently a basis for early termination. The United States believes that the serious nature of the underlying offense, the nature and characteristics of Defendant, including his prior criminal history, and his significant connection to the Sinaloa Cartel, the need for the sentence imposed to provide adequate deterrence and protect the public from further crimes by the Defendant, all militate against early termination of supervised release. In addition, the United States has spoken with U.S. Probation Officer Lissa William, and she has informed that United States that Probation Department opposes the Defendant's motion due to the underlying criminal conduct and his prior criminal record in this case. While the United States commends the Defendant for his positive steps and rehabilitation efforts following his release from custody, the United States respectfully requests that the Court deny Defendant's motion to terminate supervised release in this case.

## CONCLUSION

For these reasons, this Court should deny Defendant's motion requesting early termination of supervised release.

DATED: February 25, 2022     Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Matthew J. Sutton*
MATTHEW J. SUTTON
Assistant U.S. Attorney